IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KENNETH R. PIÑA    :   CIVIL ACTION
           :
   v.       :
           :
HENKEL CORPORATION, ET AL.  :   NO. 07-4048

**<u>MEMORANDUM</u>**

**Padova, J.**               **March 26, 2008**

   Plaintiff Kenneth R. Piña filed this employment discrimination action alleging that he was

fired from his job as Chief Legal Officer for Defendant Henkel Corporation on account of his age

and in retaliation for his attempts to inquire into questionable activities on the part of various Henkel

entities.  In addition to asserting claims against Henkel Corporation, the Complaint asserts claims

against Defendants Henkel of America, Inc., the holding company for Henkel KGaA; Henkel KGaA,

the parent company of Henkel Corporation and Henkel of America; Lothar Steinebach, Executive

Vice President, Chief Financial Officer and General Counsel of Henkel KGaA, and the individual

to whom Plaintiff reported; and Jochen Krautter, Chairman of the Board of Henkel Corporation and

Executive Vice President of Henkel KGaA.  Defendants have moved to dismiss five of the six counts

of the Complaint.  For the following reasons, we grant the motions in part.

I.   BACKGROUND

   The Complaint alleges that Plaintiff was Senior Vice President, Chief Legal Officer, and

Corporate Secretary of Defendant Henkel Corporation from October 1999 until February 2006.

(Compl. ¶ 1.)  Throughout his employment at Henkel Corporation, Plaintiff received excellent

performance evaluations from his supervisors and high praise from his business clients.  (<u>Id.</u> ¶ 2.)

Nevertheless, on February 14, 2006, Plaintiff was fired from his position with the company.  (<u>Id.</u>

¶ 3.)  According to Plaintiff, he was fired because he (1) opposed and attempted to investigate an

unlawful bribery scheme at Henkel's Mexican subsidiary, which was controlled by Henkel

Corporation's senior management,[1] (2) opposed and inquired into questionable investor solicitation

practices by Henkel KGaA in the United States,[2] (3) opposed and attempted to end Henkel

Corporation's and Henkel KGaA's practice of discriminating against older workers,[3] and (4)

highlighted activities by Henkel KGaA that undermined the corporate veil between it and Henkel

Corporation.[4]  In addition, Plaintiff contends that he was fired because of his age (48 at the time) and

---

[1]Plaintiff asserts that Henkel management became aware that Henkel Mexicana was making "improper payments to a management employee of one of its key customers in order to retain Henkel's business and profit margins at this customer's facility and to the direct detriment of the customer." (Compl. ¶ 50).  Plaintiff raised this issue with the management of Henkel Mexicana and Henkel KGaA, and was assured that the payments would be discontinued.  (Id. ¶¶ 51-52.)  When they were not, Plaintiff "requested a full audit of the operations of Henkel Mexicana and that appropriate disciplinary action and training be imposed on . . . all relevant employees." (Id. ¶ 55.)  Krautter, however, refused to allow the audit to proceed.  (Id. ¶ 57.)  Plaintiff took up the matter with Steinebach in his capacity as CFO of Henkel KGaA, but Steinebach refused to intervene.  (Id. ¶ 60.)  Plaintiff was informed by several Henkel executives that Krautter and Steinebach were "upset with his persistence in attempting to investigate and audit the improper payment scheme . . . ." (Id. ¶ 62.)  Henkel KGaA removed Plaintiff from his responsibilities relative to Mexico and placed that region under Henkel KGaA's control and management.  (Id. ¶ 63.)

[2]Plaintiff alleges that in 2005, Henkel KGaA made a "conscious effort to increase the percentage of its non-voting shares that were held by United States residents and entities." (Id. ¶ 65.)  Plaintiff raised concerns with Henkel KGaA about the legal and accounting implications of such activities, but his efforts in this regard were rebuffed or ignored.  (Id. ¶¶ 66-67.)  By 2006, the percentage of U.S. based ownership of non-voting shares had "increased significantly to approximately 25% of the total outstanding shares." (Id. ¶ 68.)

[3]According to Plaintiff, Henkel KGaA restricted career advancement opportunities by limiting the identification of "high potential" employees to individuals who were under the age of 40.  (Id. ¶ 72.)  Plaintiff repeatedly attempted to stop this conduct without success.  (Id. ¶ 73.)

[4]Plaintiff alleges that as Henkel KGaA moved from a regional to global reporting structure, its executives "increasingly grew frustrated when advised that their conduct and activities in the United States were governed by United States laws and regulations." (Id. ¶ 76.)  It "began to exercise direct management control and authority over United States business operations," which

in breach of Henkel Corporation's Severance Pay Plan.

Plaintiff alleges that the following events took place immediately preceding his firing.  On January 31, 2006, Plaintiff was scheduled to meet with Defendant Steinebach in Germany.  Prior to that meeting, an attorney from Henkel KGaA informed Plaintiff that positions he had taken on several compliance-related issues had not been well-received at Henkel KGaA headquarters, particularly by Defendants Krautter and Steinebach.  (Id. ¶ 27.)  Plaintiff was told, apparently by the attorney, that he should "recall that Henkel is a German company" and that he should "get in the boat."  (Id.)  When Plaintiff met with Steinebach, Steinebach told him that KGaA had made a decision to interview candidates outside the company for Plaintiff's position.  (Id. ¶ 28.)  When Plaintiff asked why, Steinebach informed Plaintiff that he was "too much of a lawyer," without providing any performance-related reason for the decision.  (Id. ¶ 29.)

On February 14, 2006, the President of Henkel of America, Inc. and William Read, the Senior Vice President in charge of Human Relations at Henkel Corporation, informed Plaintiff that his employment was being terminated, effective immediately.  (Id. ¶ 35.)  As a result of his termination, Plaintiff also lost his position as a member of Henkel Corporation's Board of Directors and his position as a member of the Board of Directors on Henkel of America, Inc.  (Id. ¶ 39.)  Read told Plaintiff that his firing was not performance-related, and that the decision was being made as a matter of "corporate convenience."  (Id. ¶¶ 36-37, 41.)  Read also told Plaintiff that if they were unable to reach an amicable accord on the terms of Plaintiff's separation, Henkel would assert that it had cause to fire him.  (Id. ¶ 41.)  Finally, Read further advised Plaintiff not to seek counsel

---

made it increasingly difficult to maintain the corporate veil between Henkel Corporation and Henkel KGaA.  (Id. ¶ 78.)  Plaintiff was responsible for ensuring that the corporate veil was maintained, and attempted without success to do so.  (Id. ¶ 83.)

because Henkel would view such action as "going nuclear" and would respond in kind.  (Id. ¶ 42.) Ultimately, Defendants denied Plaintiff any of the payments and benefits to which he was entitled under the terms of Henkel's Severance Pay Plan.  (Id. ¶ 44.)

On July 12, 2006, Plaintiff filed an administrative complaint with the Pennsylvania Human Relations Commission ("PHRC"), alleging that he was fired because of his age.[5]  The Complaint names Henkel Corporation, Henkel of America, Inc., Steinebach and Krautter as Respondents. Almost a year later, on June 21, 2007, Plaintiff filed an amended administrative complaint with the PHRC, which  added a claim against Henkel Corporation, Steinebach and Krautter that he was fired in reprisal for his opposition to Henkel Corporation's unlawful practice of discriminating against older workers.  Respondents filed a motion to dismiss the Amended Complaint as time-barred, but the PHRC did not rule on that motion and instead ordered Respondents to file an Answer to the Amended Complaint.

Plaintiff commenced the instant action on September 26, 2007.[6]  The Complaint contains six Counts. Count I asserts a claim against all Defendants for wrongful discharge in violation of Pennsylvania public policy.  Count II asserts an ADEA claim against the Henkel entities for retaliatory discharge pursuant to 29 U.S.C. § 623(d).  Count III asserts an ADEA claim against the

---

[5]According to Plaintiff, he dual-filed this Complaint, as well as his subsequent Amended Complaint, with the Philadelphia District Office of the United States Equal Employment Opportunity Commission ("EEOC").

[6]In federal actions under the Age Discrimination in Employment Act ("ADEA"), a plaintiff need not await a right-to-sue letter.  See 29 U.S.C. § 626(d).  Rather, he must merely file a charge with the PHRC or EEOC no less than 60 days before filing suit to permit the PHRC or EEOC to attempt "to eliminate any alleged unlawful practice by informal methods of conciliation, conference and persuasion." Seredinski v. Clifton Precision Prods. Co., 776 F.2d 56, 63 (3d Cir. 1985) (quoting 29 U.S.C. § 626(d)).

Henkel entities for wrongful discharge under 29 U.S.C. § 623(a).  Count IV asserts a claim for retaliatory discharge against all Defendants under section 955(d) of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 955(d).  Count V asserts a PHRA claim against all Defendants for wrongful discharge based on age pursuant to 42 Pa. Cons. Stat. Ann. § 955(a). Finally, Count VI asserts a breach of contract claim against Henkel Corporation based on its alleged breach of the company's Severance Pay Plan.

## II.   LEGAL STANDARD

In two separate motions, one filed by Henkel Corporation and Henkel of America, Inc., and one filed by Henkel KGaA, Steinebach, and Krautter, Defendants have moved to dismiss all but Count VI of the Complaint for failure to state claims upon which relief may be granted.  When determining a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court looks primarily at the facts alleged in the complaint and its attachments, Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994), and views all well pled allegations in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).  A Rule 12(b)(6) motion will be granted if the plaintiff has not articulated enough facts "to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).  It is not enough for a plaintiff to allege mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1965.

## III.   DISCUSSION

### A.   Count I – Wrongful Discharge in Violation of Pennsylvania Public Policy

In both Motions to Dismiss, Defendants argue that Count I, which asserts a claim against all Defendants for wrongful discharge in violation of Pennsylvania public policy, fails as a matter of law

because Plaintiff cannot identify any Pennsylvania public policy that his termination violated.

Pennsylvania does not recognize a common law cause of action against an employer for termination of at-will employment.  See Geary v. U.S. Steel Corp., 319 A.2d 174, 175 (Pa. 1974).  Moreover, in the absence of a contract, there is a presumption that employment is at-will.  McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 287 (Pa. 2000).  One way to rebut the presumption of at-will employment is to establish an applicable recognized public policy exception arising out of Pennsylvania law that protects the employee.  See Grose v. Procter & Gamble Paper Prods., 866 A.2d 437, 441 (Pa. Super. Ct. 2005); McLaughlin, 750 A.2d at 287.  Pennsylvania public policy is determined by looking at the Pennsylvania Constitution, Pennsylvania court decisions, and statutes promulgated by the Pennsylvania legislature.  Id. at 288.  Courts in this District have indicated that the Pennsylvania Rules of Professional Conduct may also set forth public policy that will support a claim for wrongful termination.  See Pyles v. City of Philadelphia, Civ. A. No. 05-1769, 2006 WL 3613797, at *7 (E.D. Pa. Dec. 8, 2006) (citing Paralegal v. Lawyer, 783 F. Supp. 230 (E.D. Pa. 1992); Brown v. Hammond, 810 F. Supp. 644, 646 (E.D. Pa. 1993) ("While courts generally look to constitutional or legislative pronouncements, some courts have found an expression of significant public policy in professional codes of ethics.")).  The burden of proving the applicability of a public policy exception lies with the employee.  Rutherford v. Presbyterian-University Hosp., 612 A.2d 500, 503 (Pa. Super. Ct. 1992).

Here, Plaintiff asserts that Pennsylvania Rules of Professional Conduct 1.2(d), 1.13, and 8.4(a-d) provide him with employment protection for questioning (1) an improper payment scheme by Henkel's Mexican subsidiary, (2) Henkel's investor solicitation practices, and (3) the

undermining of the corporate veil between Henkel Corporation and Henkel KGaA.[7]  Specifically, he asserts that these rules required him to monitor and ensure Henkel's compliance with its legal obligations and that it was his adherence to those Rules of Professional Conduct that resulted in his firing.

Defendants argue that the only duties imposed on Plaintiff by the Rules of Professional Conduct are the duties to communicate with his client about conduct he believes to be unethical or illegal and to withdraw from representation of the client if the client will use the lawyer's services to further a course of criminal or fraudulent conduct.  See Pa. R.P.C 1.4(5), 1.6 cmt. 22.  At this stage of the proceedings, however, where Plaintiff has alleged that he communicated to his employer, i.e., his client, about conduct that he believed to be unethical and/or illegal, and that he was fired as a result, we are not prepared to say that there was no violation of Pennsylvania public policy as manifested in the Pennsylvania Rules of Professional Conduct.  Rather, we find it preferable to

---

[7]Rule 1.2(d) provides that:

> A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

Rule 1.13 provides in pertinent part that if a lawyer for an organization knows that someone in the organization intends to violate the law in a way that will hurt the organization or be imputed to the organization, he shall proceed as is "reasonably necessary in the best interest of the organization." Pa. R.P.C. 1.13(b).  If, despite his efforts, "the highest authority that can act on behalf of the organization insists upon action . . . that is clearly a violation of law . . . the lawyer may resign in accordance with Rule 1.16." Pa. R.P.C. 1.13(c).

Finally, Rule 8.4 provides that it is professional misconduct for a lawyer to violate the rules of professional conduct; commit a criminal act that reflects on his honesty, trustworthiness or fitness as a lawyer; engage in dishonesty, fraud, deceit or misrepresentation; or engage in conduct that is prejudicial to the administration of justice.

permit Plaintiff to develop the facts regarding the alleged termination to give him the opportunity to establish that the termination violated Pennsylvania public policy.  We therefore deny Defendants' Motions insofar as they seek dismissal of Count I.

      B.      <u>Counts III and V – Wrongful Termination Based on Age</u>

Defendants also argue that Plaintiff has failed to state a claim that he was terminated on account of his age in violation of the ADEA and the PHRA, because he has not pled the requisite causation between his age and his termination.  Under the <u>McDonnell Douglas</u> standard as applied by the United States Court of Appeals for the Third Circuit in ADEA cases,[8] "to state a claim for age discrimination under the ADEA, a plaintiff must ordinarily allege that (1) he is over 40, (2) he is qualified for the position in question, (3) he suffered from an adverse employment decision, and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination." <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 247 (3d Cir. 2006); <u>see</u> <u>also</u> <u>Lit v. Infinity Broadcasting Corp. of Pennsylvania</u>, Civ. A. No. 04-3413, 2004 WL 2403007, at *2 (E.D. Pa. Oct. 8, 2004). Moreover "[t]he same legal standard applies to a claim under the PHRA as applies to an ADEA claim." <u>Hill</u>, 455 F.3d at 247 (citing <u>Kautz v. Met-Pro Corp.</u>, 412 F.3d 463, 466 n.1 (3d Cir. 2005)). Here, Plaintiff has alleged that he is over 40, that he was qualified for the position that he occupied for over six years, and that he was fired, but he has not alleged that the individual who replaced him was younger than he was.  Furthermore, he has not alleged any other circumstances that would

---

[8]Plaintiff does not assert that this case involves direct evidence of age discrimination and, thus, should proceed under the framework set forth in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989), rather than the framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), which applies in cases in which the plaintiff will attempt to prove discrimination based on indirect evidence.  Moreover, he alleges no facts in his Complaint that could be read to suggest the existence of direct evidence that Defendants terminated his employment on account of his age.

permit a reasonable inference of age discrimination.

Plaintiff contends that he has met the requisite pleading standards because he twice alleges that he was fired on account of his age.  (See Compl. ¶¶ 102, 106).  However, this conclusory allegation is simply insufficient to state a claim under the 12(b)(6) standard recently refined by the Supreme Court in Twombly.  Indeed, it is "no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'"  Phillips v. County of Allegheny, 505 F.3d 224, 233 (3d Cir. 2008) (quoting Twombly, 127 S. Ct. at 1969 n.8)).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  Twombly, 127 S. Ct. at 1965.  In this case, there are simply no facts alleged in the Complaint that give rise to anything more than pure speculation that Plaintiff was fired on account of his age.[9]  In the absence of any factual allegations suggestive of such discrimination, much less an explicit allegation that Plaintiff was replaced by a younger employee, we find that he has failed to state a claim for age discrimination under either the ADEA or the PHRA.  We therefore dismiss Counts III and Count V of the Complaint.

C.     Counts II and IV – Retaliatory Discharge for Opposition to Discriminatory Practices

Defendants advance a variety of additional arguments for the dismissal of Counts II and IV of the Complaint, which assert claims that Defendants terminated Plaintiff's employment in retaliation for his opposition to their practices of discriminating against older workers.  First,

---

[9]We acknowledge that Plaintiff has alleged that Defendant Henkel KGaA had a practice of discriminating against older workers.  (Compl. ¶ 75.) However, in describing that practice, Plaintiff alleges only that Henkel KGaA "restricted career advancement opportunities by limiting the identification of 'high potential' employees to individuals who were under forty . . . ."  (Id. ¶ 72.) There is no suggestion that Henkel KGaA or any other Defendant had a discriminatory practice of firing workers who were over forty.  Moreover, even if there were, there are simply no factual allegations that even begin to suggest that Defendants fired Plaintiff on account of his age.

Defendants argue that the retaliation claims are barred by the statute of limitations because Plaintiff did not raise them before the EEOC and PHRC in a timely manner.  Second, KGaA argues that the retaliation claims against it should be dismissed because Plaintiff failed to exhaust his administrative remedies by failing to name KGaA as a respondent in either of his administrative complaints.  Next, KGaA argues that we should dismiss the ADEA retaliation claim against it (Count II), because it is not Plaintiff's employer and is a foreign corporation not subject to the ADEA.  Finally, Defendants Krautter and Steinebach argue that we should dismiss the PHRA retaliation claim against them (Count IV), because there are no allegations connecting them to the illegal conduct.  For the following reasons, we reject all of these arguments.

       1.   <u>Statute of Limitations</u>

The ADEA ordinarily requires age discrimination claims that also fall within the ambit of the PHRA to be filed with the EEOC within 300 days from the date of the unlawful employment practice, 29 U.S.C. § 626(d)(2), and the PHRA requires that discrimination claims be filed with the PHRC within 180 days of the alleged discrimination.  43 Pa. Cons. Stat. Ann. § 959(h).  Here, Plaintiff did not file his administrative claim for retaliation until he filed his amended administrative complaint on June 21, 2007, over a year after his February 14, 2006 termination.  Thus, Defendants argue that he missed both deadlines and his retaliation claims should be barred by the statute of limitations.

After an administrative complaint has been filed with the PHRC, it may be amended "to clarify or amplify allegations . . . or to add material allegations which are related to or grow out of the subject matter of the original complaint," and these amendments relate back to the original filing date of the complaint.  16 Pa. Code § 42.35(b).  Likewise, after an administrative charge has been

filed with the EEOC, the employee may amend his charge by "alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge."  29 C.F.R. § 1601.12(b).  Such amendments relate back to the date the original charge was first received.  Id.  Moreover, "the scope of the original charge should be liberally construed." Hicks v. ABT Assocs., Inc., 572 F.2d 960, 965 (3d Cir. 1978).   In fact, even when an employee has not filed an amended administrative complaint, the scope of any subsequent civil action is not limited to the four corners of the administrative charge; rather, the civil action is "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Id. at 963 (quoting Opstapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)).

Plaintiff's original administrative complaint in this case alleged that Plaintiff was fired on account of his age "[p]ursuant to a consistent pattern and practice by Henkel to discriminate against older workers."  (Admin. Compl. at ¶ 18, attached as Ex. A to Mot. of Henkel Corp. and Henkel of Amer. ("Henkel Corp. Mot."))  The amended administrative complaint alleged that Plaintiff was "terminated from [his] position as Chief Legal Officer of Henkel Corporation because of [his] opposition to its unlawful practice of discriminating against older workers."  (Am. Admin. Compl. at ¶ 7, attached as Ex. B to Henkel Corp. Mot.)  Defendants argue that the "opposition" charge did not "grow out of the subject matter" of the original complaint and, thus, is time barred.  However, given our obligation to liberally construe the original administrative complaint, and the fact that the original complaint included, among other assertions, an allegation that Henkel Corporation had a policy and practice of discriminating against older workers, we find that the allegations in the original complaint were broad enough to give rise to the subsequent opposition charge.  See, e.g.,

Mahoney v. Lancaster County Motors, Civ. A. No. 05-2395, 2006 WL 1284951, at *7 (E.D. Pa. May 8, 2006) (finding that statute of limitations did not bar retaliation claims in Amended Administrative Complaint because those claims "merely added material allegations related to subject matter in the Administrative Complaint").

Moreover, even if the amended administrative complaint were time-barred, the retaliation claim could have been raised in Plaintiff's federal complaint in the first instance, as the investigation that could reasonably be expected to grow out of the original charge of discrimination would certainly include an investigation into possible retaliation.  See, e.g., Howze v. Jones & Laughlin Steel Corp., 750 F. 2d 1208, 1212 (3d Cir. 1984) (finding claim that employee had not been promoted in retaliation for her activities on behalf of the J&L Black Caucus could be added to federal complaint even though administrative complaint asserted only that she was not promoted because of her race); Rouse v. II-VI, Inc., Civ. A. No. 06-566, 2007 WL 1007925 (W.D. Pa. March 30, 2007) (finding that allegations in federal complaint that plaintiff was fired in retaliation for complaining that he was being discriminated against "can reasonably be viewed as an explanation of the allegations in Plaintiff's EEOC charge" that Defendants fired him because of his race and age). We therefore reject Defendants' argument that the retaliation/opposition claims set forth in Count II and IV of the Complaint are barred by the statute of limitations.

        2.     **Failure to Name Henkel KGaA as a Respondent in the Administrative Complaints**

Defendant Henkel KGaA next argues that Plaintiff's ADEA and PHRA retaliation claims should be dismissed because he has failed to exhaust his administrative remedies against Henkel KGaA.  Henkel KGaA maintains that Plaintiff failed to exhaust because neither his initial administrative complaint nor his amended administrative complaint named Henkel KGaA as a

respondent, even though Plaintiff was represented by counsel.[10]

A discrimination complaint may ordinarily be brought only against a party previously named in an administrative complaint. See Schafer v. Board of Public Educ., 903 F.2d 243, 251-52 (3d Cir. 1990); Snead v. Hygrade Food Products Assocs., Civ. A. No. 98-2657, 1998 WL 910223, at *2 (E.D. Pa. Dec. 28, 1998). The purpose of this rule is to "alert the implicated parties and to encourage an informal conciliation process in lieu of trial." Kunwar v. Simco, 135 F. Supp. 2d 649, 653 (E.D. Pa. 2001) (citing Dreisbach v. Cummins Diesel Engines, Inc., 848 F. Supp. 593, 595 (E.D. Pa. 1994)). However, the Third Circuit recognizes an exception to the requirement that a party be named in the administrative complaint when that party received notice and when there is a shared commonality of interest with a named party. Schafer, 903 F.2d at 252 (citing Glus v. G.C. Murphy Co., 629 F.2d 248, 251 (3d Cir. 1980)). "As a result of this exception, district courts have permitted discrimination suits to go forward, notwithstanding imperfect exhaustion, in a variety of situations." Kunwar, 135 F. Supp. 2d at 653 (citing cases). Indeed, the fact that an individual is named in the body of the EEOC charge is typically sufficient to establish notice to that individual. See id. at 654; Snead, 1998 WL 910223, at *2.

Plaintiff contends that his failure to name Henkel KGaA as a respondent in his administrative complaints is not fatal, as he mentioned Henkel KGaA and "its key executives" (Krautter and Steinebach) in his administrative complaints, and there is a "commonality of interest" between Henkel KGaA and the named parties, i.e., Henkel Corporation, Henkel of America, Inc., Krautter and Steinebach. Specifically with respect to commonality of interest, Plaintiff notes that in his

---

[10]Henkel KGaA also argues that the direct age discrimination claims in Count III and V should be dismissed on this basis. However, because we have already dismissed those Counts, we address this argument only in connection with the retaliation claims in Count II and IV.

current federal Complaint, he alleges that Henkel KGaA controlled the business activities and personnel decisions of Henkel Corporation.  As such, he now contends that Henkel KGaA was directly responsible for his firing.

Henkel KGaA argues that the references to it in the initial administrative complaint were merely "passing references" that did not put it on notice as to the alleged basis for liability against it.  However, the initial administrative complaint in this case mentioned Henkel KGaA a number of times.  Specifically, it: (1) identified Steinebach as the Executive Vice President, Chief Financial Officer and General Counsel of Henkel KGaA, the parent company of Henkel Corporation; (2) identified Krautter as an Executive Vice President of Henkel KGaA; (3) alleged that Plaintiff was rated as one of Henkel's foremost global leaders by a human resources company that was retained by Henkel KGaA to conduct leadership evaluations of senior Henkel management employees; (4) stated that Henkel KGaA sent Plaintiff to participate in the prestigious INSEAD executive management training program; (5) stated that Steinebach and others in Henkel KGaA made the decision to interview external candidates for Plaintiff's position; and (6) stated that no performance-related or other valid reason was provided for Steinebach and Henkel KGaA's decision to interview external candidates.  (Admin. Compl. ¶¶ 5-6, 8, 10-11.)  Given these numerous references to Henkel KGaA, the combination of which link Henkel KGaA to the alleged discriminatory conduct, and Henkel KGaA's corporate relationship with two of the named parties, we find both the notice and commonality of interest requirements to be satisfied.  Plaintiff has therefore adequately exhausted his claims against Henkel KGaA and we reject Henkel KGaA's claim otherwise.

### 3.   ADEA's Employer Requirement

Henkel KGaA next argues that  it cannot be liable to Plaintiff under the ADEA because it was

not Plaintiff's employer and the ADEA only imposes liability on an "employer" who violates the statute.[11] 29 U.S.C. § 623.   However, a parent corporation can be held  liable under the ADEA for the discriminatory actions of its subsidiary by piercing the corporate veil under either an "alter ego" or a "single employer" theory.  See, e.g., Ziegler v. Delaware County Daily Times, 128 F. Supp. 2d 790, 794-802 (E.D. Pa. 2001) (stating that although "there is a presumption that a corporate parent is not the ADEA 'employer' of its subsidiaries' employees," plaintiff may nevertheless reach the corporate parent on an ADEA claim by piercing the corporate veil) (citing Marzano v. Computer Science Corp., 91 F.3d 497 (3d Cir. 1996) (applying veil piercing in Title VII employment discrimination suit)).

Here, Plaintiff worked for Henkel Corporation, a subsidiary of Henkel KGaA, and seeks to hold Henkel KGaA liable as Henkel Corporation's corporate parent.  To do so, he must pierce the corporate veil by showing that Henkel KGaA is Henkel Corporation's alter ego or that the two are essentially a single entity, because they share common ownership and are in fact operating as a single corporate combine.  See Ziegler, 128 F. Supp. 2d at 796.  While the Complaint does not contain sufficient factual allegations from which we could conclude at this early stage of the proceedings that there was such a relationship between Henkel Corporation and Henkel KGaA, it does allege that "Henkel KGaA executives . . . expand[ed] their efforts to exert direct authority and control at all management levels over the operations and employees of Henkel Corporation in such ways that

---

[11]Henkel KGaA also argues that we should dismiss Plaintiff's PHRA claims on this same basis as we ordinarily judge PHRA claims by the same legal standards that we apply to ADEA claims.  However, as we reject the argument that the ADEA claims against Henkel KGaA should be dismissed because Henkel KGaA was not Plaintiff's employer, we need not reach the question of whether the same legal standards apply to Plaintiff's PHRA claims in this context.  For analogous reasons, we also do not reach Henkel KGaA's argument that Plaintiff's PHRA claims should be dismissed because Henkel KGaA is a foreign entity.

would serve to compromise any efforts to preserve the integrity of the legal distinction between the companies," and that while Plaintiff attempted to maintain the corporate veil between the companies, he was unsuccessful.  (Compl. ¶¶ 81, 83.)   At this juncture, we find these allegations sufficient to withstand KGaA's Motion to Dismiss and will give Plaintiff the opportunity to develop the factual basis for his "single employer" or "alter ego" theory in discovery.

<h4 style="text-align:center">4.    Liability of Foreign Entities</h4>

Henkel KGaA also argues that we should dismiss the ADEA retaliation claim against it because it is a foreign corporation not subject to the ADEA.  The ADEA provides in section 623(h)(2) that its prohibitions do not apply to a "foreign person not controlled by an American employer." 29 U.S.C. § 623(h)(2).  As a German corporation headquartered in Germany, Henkel KGaA is a foreign "person" under the ADEA.  See 29 U.S.C. § 630(a).  Furthermore, Plaintiff does not allege that Henkel KGaA is controlled by any American corporation.

The EEOC, however, has promulgated policy guidance interpreting section 623(h)(2), which states that the ADEA covers the employment practices of a foreign employer that is operating in the United States.  See E.E.O.C. v. Kloster Cruise Ltd., 888 F. Supp. 147, 149-50 (S.D. Fla. 1995) (citing EEOC Policy Guidance, N-915.039, Empl.Prac.Guide (CCH) ¶ 5183, at 6536 (March 3, 1989)).  "Because the EEOC is charged with administering the ADEA, its interpretation of that statute ordinarily is entitled to great deference." Id. at 150 (citing Passer v. American Chem. Soc'y, 935 F.2d 322, 329 (D.C. Cir. 1991); Sims v. Trus Joist MacMillan, 22 F.3d 1059, 1060-61 (11th Cir. 1994)).  Both the United States Court of Appeals for the Second Circuit and the United States District Court for the Southern District of Florida have found, based on this policy guidance and rules of statutory interpretation, that a foreign company may be liable under the ADEA for

discrimination against employees on U.S. soil.  <u>Kloster Cruise</u>, 888 F. Supp. at 149-52; <u>Morelli v.</u>
<u>Cedel</u>, 141 F.3d 39, 41-44 (2d Cir. 1998) (stating that the context in which section 4(h)(2) was added
to the ADEA in 1984 "reveals that Congress' purpose was not to exempt the domestic workplaces
of foreign employers from the ADEA's prohibition of age discrimination.").  We agree with the
analyses in these cases and, thus, deny Henkel KGaA's motion insofar as it seeks dismissal of the
ADEA retaliation claim against it because it is a foreign corporation.

5.      <u>Individual Liability of Krautter and Steinebach</u>

Finally, Defendants Krautter and Steinebach argue that the claims against them under section
955(e) of the PHRA, which imposes liability on those who "aid, abet, incite, compel or coerce the
doing of age discrimination," should be dismissed for failure to state a claim upon which relief may
be granted.  In order to state a claim for retaliation under this section (the only PHRA claim
remaining against Defendants), a plaintiff must allege that the defendants "intended to aid the
[employer's] discriminatory behavior, or shared some common purpose with the [employer] to
retaliate." <u>Destefano v. Henry Michell Co.</u>, No. 99-5501, 2000 WL 433993, at *3 (E.D. Pa. Apr. 13,
2000).  Krautter and Steinebach argue that the Complaint is devoid of any such allegations.  In
addition, Krautter argues that the claims against him must be dismissed because "it is black letter
law that 'only supervisory employees can be held liable under section 955(e).'"  (Mem. of Henkel
KGaA, Krautter & Steinebach, at 12 (citing <u>Bacone v. Philadelphia Housing Auth.</u>, Civ. A. No. 01-
419, 2001 WL 748177, at *2 (E.D. Pa. June 27, 2001)).

Plaintiff maintains, however, that he "has pled more than enough to hold both these
defendants in the case" as the allegations are that each was directly responsible for the decision to
terminate his employment.  Specifically, Plaintiff points to allegations that "Steinebach and Krautter

-17-

ordered the President of Henkel Corporation and its Senior Vice President for Human Resources . . . to terminate the employment of plaintiff . . . even though they knew there were no lawful grounds to do so." (Compl. ¶ 85). He further asserts that Steinebach was his direct supervisor and that Krautter was the Chairman of Henkel Corporation's Board of Directors, which, in his view, establishes Krautter's requisite supervisory role.

Defendants are correct that the Complaint does not specifically allege that the moving Defendants "intended to aid the Company's discriminatory behavior, or shared some common purpose with the Company to retaliate." However, the Complaint does allege that "the positions that [Plaintiff] had taken on several compliance related issued had not been well received by . . . Krautter and Steinebach"; that Steinebach's request that he take part in the process for selecting a new Chief Legal Officer was "in reprisal for plaintiff's efforts to stop improper corporate conduct"; that "Plaintiff's discharge from employment . . . was undertaken by and with the direct involvement of defendants Krautter and Steinebach"; and that both knew that there were "no lawful grounds" on which to terminate his employment. (Compl. ¶¶ 27, 32, 45, 85.) As such, the plain thrust of the Complaint is that both Krautter and Steinebach exerted some supervisory control over Plaintiff's employment situation and were both involved in terminating his employment on account of his objections to improper corporate conduct, which included objections to the corporate practice of age discrimination. We therefore find Plaintiff's allegations against Steinebach and Krautter sufficient to survive Defendants' motion to dismiss.

IV.   CONCLUSION

For the foregoing reasons, we dismiss Counts III and V of the Complaint, but deny Defendants' Motions to Dismiss in all other respects. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KENNETH R. PIÑA          :          CIVIL ACTION
                         :
        v.               :
                         :
HENKEL CORPORATION, ET AL.    :          NO. 07-4048

## ORDER

**AND NOW**, this 26th day of March, 2008, upon consideration of Henkel Corporation's and

Henkel of America, Inc.'s "Motion to Dismiss Counts I, II, III, IV and V of the Complaint" (Doc.

#10), the "Motion to Dismiss Counts I, II, III, IV, and V Against Henkel KGaA, Lothar Steinebach

and Jochen Krautter" (Doc. #11), and all concomitant submissions, **IT IS HEREBY ORDERED**

that the Motions are **GRANTED** in part and **DENIED** in part as follows

1.      The Motion are **GRANTED** as to Count III and V, and those Counts are

        **DISMISSED**.

2.      The Motions are **DENIED** in all other respects.


                                    BY THE COURT:


                                     /s/ John R. Padova, J.
                                    John R. Padova, J.